Thomas P. Riley, SBN 194706
LAW OFFICES OF THOMAS P. RILEY, P.C.
First Library Square
1114 Fremont Ave.
South Pasadena, CA 91030

Tel:  626-799-9797
Fax:  626-799-9795
TPRLAW@att.net

Attorneys for Plaintiff
J & J Sports Productions, Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| J & J SPORTS PRODUCTIONS, INC., | Case No.:  2:14-cv-06934-WDK-PLA |
|---|---|
| Plaintiff, | PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES |
| vs. | |
| DAVID OQUELI AREVALO, et al., | Date:   October 19, 2015 |
| Defendants. | Time:  10:00 a.m. |
| | Place:  TBD |
| | Judge:  Honorable William D. Keller |

TO THE HONORABLE COURT, THE DEFENDANTS AND TO THEIR
ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 19, 2015 at 10:00 a.m., or as soon

thereafter as this matter may be heard in a courtroom of the United States District

Court, Central District of California, located at 312 North Spring Street, Los

Angeles, California 90012, Plaintiff J & J Sports Productions, Inc., by and through

counsel, will move for an Order pursuant to Federal Rule of Civil Procedure 56(a) granting Summary Judgment in favor of Plaintiff.

This Motion will be made on the grounds that there is no genuine issue of material fact with respect to the liability of Defendants David Oqueli Arevalo, Claudia Lizeth Henriquez, and Sofia Rebolledo, all individually and d/b/a Playas De Acapulco a/k/a Restaurant Playa De Acapulco (hereinafter "Defendants"). for Plaintiff's claims against Defendants under 47 U.S.C. § 605 or, in the alternative, 47 U.S.C. § 553, and for its conversion claim, and therefore Plaintiff is entitled to judgment as a matter of law.

Pursuant to Local Rule 7-3, on August 28, 2015, Plaintiff's counsel participated in a "meet and confer" with defense counsel regarding the relief sought herein. The parties were unable to come to a resolution. *Riley Declaration* ¶ 8.

The Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities served and filed herewith, the Affidavit of Joseph M. Gagliardi and exhibits attached thereto, the Declarations filed herewith and exhibits attached thereto, and such further oral and documentary evidence or argument as may be presented at the hearing on Plaintiff's Motion.

Dated:  September 11, 2015        /s/ *Thomas P. Riley*
                                                    **LAW OFFICES OF THOMAS P. RILEY, P.C.**
                                                    By:  Thomas P. Riley
                                                    Attorneys for Plaintiff
                                                    J & J Sports Productions, Inc.

# <u>TABLE OF CONTENTS</u>

**PAGE(S)**

TABLE OF AUTHORITIES......................................................................ii

STATEMENT OF THE ISSUE   ......................................................... 3

STATEMENT OF FACTS ................................................................. 3

LEGAL STANDARD ....................................................................... 3

ARGUMENT.................................................................................. 4

I.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER DEFENDANTS ILLEGALLY INTERCEPTED AND BROADCAST THE PROGRAM AT THEIR COMMERCIAL ESTABLISHMENT.......................................4

    A.    <u>Plaintiff's Program Was Intercepted And Received In Violation Of Federal Statutes And Plaintiff Is A Person Aggrieved Under Those Statutes</u>.................................................................4

    B.    <u>Plaintiff Did Not Authorize Defendants To Intercept, Receive, Exhibit Or Otherwise Broadcast The Program And Therefore Defendants Are Liable To Plaintiff</u>…..............................7

    C.    <u>Defendants Are Liable To Plaintiff For Conversion</u>.........................11

II.    PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES AND ENHANCED DAMAGES AS PERMITTED UNDER THE UNITED STATES CODE............................................................12

    A.    <u>Congress Considers Piracy To Be Theft And Significant Damages Are Necessary To Curb The Pervasive Practice Of Piracy</u>.........................................................................13

        1.    The Statutes Contemplate both Specific and General Deterrence................................................................14

    B.    <u>Statutory Damages And Enhanced Statutory Damages</u>....................15

    C.    <u>The Damages Requested By Plaintiff Comport With The Suggestion Of The Ninth Circuit</u>.................................................19

III.    PLAINTIFF IS ENTITLED TO DAMAGES FOR CONVERSION..........20

IV.    PLAINTIFF IS ENTITLED TO COSTS AND REASONABLE
        ATTORNEYS' FEES...................................................................................20

CONCLUSION................................... ...................................................20

# TABLE OF AUTHORITES

**PAGE(S)**

<u>**CASES**</u>

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................................ 3-4

*Celotex Corporation v. Catrett*,
477 U.S. 317 (1986).................................................................................4

*Directv, Inc. v. Pahnke*,
405 F. Supp. 2d 1182 (E.D.Cal. 2005) ..................................................11

*Directv, Inc. v. Webb*,
545 F.3d 837 (9th Cir. 2008) .................................................................5-9

*Doherty v. Wireless Broadcasting Systems of Sacramento, Inc.*,
151 F.3d 1129 (9th Cir.1998) ...................................................................5

*Don King Productions/Kingvision v. Lovato*,
911 F.Supp. 419 (N.D.Cal.1995).............................................................11

*Entertainment By J & J, Inc. v. Al-Waha Enterprises, Inc.*,
219 F.Supp.2d 769 (S.D.Tex. 2002)..................................................15, 16

*F.W. Woolworth Co. v. Contemporary Arts, Inc.*,
344 U.S. 228 (1952).................................................................................12

*J & J Sports Productions, Inc. v. Arellano*,
Case No. 2:13- cv-03128-WDK-PLA (C.D.Cal. Dec. 15, 2014)................. 5-6, 8, 9

*J & J Sports Productions, Inc. v. Brazilian Paradise, LLC*,
789 F.Supp.2d 669 (D.S.C. 2011) ...........................................................14

*J & J Sports Productions, Inc. v. Delgado*,
2012 WL 371630 (E.D.Cal. Feb. 3, 2012) .........................................6, 10

*J & J Sports Productions, Inc. v. Guzman*,
2008 WL 2682605 (E.D.Cal. July 1, 2008)..............................................15

*J & J Sports Productions, Inc. v. Jorkay, LLC*,
2013 WL 2629461 (E.D.N.C. June 11, 2013)..........................................10

*Joe Hand Promotions, Inc. v. Kennedy*,
2012 WL 932543 (N.D.Ohio March 9, 2012) .........................................11

*J & J Sports Productions, Inc. v. Kiani*,
Case No. 5:10-cv-01768-WDK-FMO (C.D.Cal. Feb. 22, 2013) .................6, 9, 10

*J & J Sports Productions, Inc. v. Marcaida*,
2011 WL 2149923 (N.D.Cal. May 31, 2011)......................................14, 19

*J & J Sports Productions, Inc. v. McCausland*,
2012 WL 113786 (S.D.Ind. Jan. 13, 2012) ........................................ 17-18

*J & J Sports Productions, Inc. v. Mendoza-Gowan*,
2011 WL 1544886 (N.D.Cal. April 25, 2011) ...................................... 8

*J & J Sports Productions, Inc. v. Morales*,
2011 WL 6749080 (E.D.Cal. Dec. 22, 2011) ....................................7, 9

*J & J Sports Productions Inc. v. Olivares*,
2011 WL 587466 (E.D.Cal. Feb 9, 2011) ..........................................17

*J & J Sports Productions, Inc. v. Paolilli*,
2011 WL 6211905 (E.D.Cal. Dec. 14, 2011) .....................................20

*J & J Sports Productions, Inc. v. Rezdndiz*,
2008 WL 5211288 (N.D.Ill. Dec. 9, 2008) ..........................................7

*J & J Sports Productions, Inc. v. Tilakamonkul*,
2011 WL 2414550 (E.D. Cal. June 10, 2011) ................................. 16-17

*J & J Sports Productions, Inc. v. Torres*,
2011 WL 6749817 (E.D.Cal. Dec. 22, 2011) ......................................6

*Joe Hand Promotions, Inc. v. Gamino*,
2011 WL 66144 (E.D.Cal. Jan. 10, 2011) .....................................12, 14

*Joe Hand Promotions, Inc. v. Moctezuma*,
2012 WL 2358254 (N.D.Tex. June 21, 2012) ......................................9

*Joe Hand Promotions, Inc. v. Pinkhasov*,
2012 WL 3641451 (D.Ariz. Aug. 24, 2012) ......................................14

*Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*,
920 F.Supp.2d 659 (E.D.Va. 2013) ............................................ 18-19

*Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*,
152 F.Supp.2d 438 (S.D.N.Y. 2001) ..............................................15

*Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*,
168 F.3d 347 (9th Cir. 1999) ..................................................6, 19

*Lauretex Textile Corp. v. Allton Knitting Mills, Inc.*,
519 F.Supp. 730 (S.D.N.Y. 1981) ................................................12

*Tyrone Pac. Intern., Inc. v. MV Eurychili*,
658 F.2d 664 (9th Cir. 1981) ....................................................11

## STATUTES AND RULES

United States Code

47 U.S.C. § 605.....................................................................passim

47 U.S.C. § 553................................................................... 5-8

Federal Rules of Civil Procedure

56 ..........................................................................................3, 21

California Statutes

Cal. Civ. Code § 3336................................................................20

**<u>MISCELLANEOUS</u>**

*U.S. Cong. & Admin. News* ...................................................... 13-14, 16

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF THE ISSUE

Whether Plaintiff is entitled to Summary Judgment against Defendants.

### STATEMENT OF FACTS

Plaintiff J & J Sports Productions, Inc. (hereinafter "Plaintiff"), was granted the exclusive nationwide commercial distribution rights to *"The One" Floyd Mayweather, Jr. v. Saul Alvarez WBC Light Middleweight Championship Fight Program,* telecast nationwide via closed circuit television on Saturday, September 14, 2013 (hereinafter the "Program"). *Joseph M. Gagliardi Affidavit* ¶ 3. Plaintiff's distribution rights encompassed all undercard events as well as the main event. *Id.* Pursuant to the contract granting Plaintiff its distribution rights, Plaintiff entered into sub-licensing agreements with various commercial establishments to permit the public exhibition of the *Program. Id.* at ¶¶ 3, 8. Without the authorization of Plaintiff, Defendants unlawfully intercepted, received and exhibited the *Program* at their commercial establishment Playas De Acapulco a/k/a Restaurant Playa De Acapulco, operating 10828 Atlantic Avenue, Lynwood, California 92062. *Id.* at ¶ 7; *Declaration of Affiant*.

### LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to produce specific facts, supported by evidence in the record, upon which a reasonable jury could find that there is a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 248. While the facts and all reasonable inferences are to be viewed in the light most favorable to the non-movant, *Anderson*, 477 U.S. at 255, the mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment. *Id.* at 247-48. As discussed below, the evidence demonstrates that there is no genuine issue of material fact with respect to whether Defendants unlawfully intercepted, received and/or broadcast the *Program* at their commercial establishment and, therefore, Plaintiff is entitled to judgment as a matter of law.

## <u>ARGUMENT</u>

I.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER DEFENDANTS UNLAWFULLY INTERCEPTED AND BROADCAST THE PROGRAM AT THEIR COMMERCIAL ESTABLISHMENT.

    A.   <u>Plaintiff's Program Was Intercepted Or Received In Violation Of Federal Statutes And Plaintiff Is A Person Aggrieved Under Those Statutes.</u>

Title 47 of the United States Code Section 605 provides that:

No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign

communication by radio and use such communication (or any information therein contained) for his own benefit or for benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substances, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).  In addition, Title 47 of the United States Code Section 553 provides, in pertinent part, that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). These statutes provide ample statutory protection against the theft of communications such as the *Program* in the instant case. *See Directv, Inc. v. Webb*, 545 F.3d 837, 844 (9th Cir. 2008). Moreover, 47 U.S.C. §§ 553 and 605 are strict liability statutes. *See* 47 U.S.C. § 553(c)(3)(C); 47 U.S.C. § 605(e)(3)(C)(iii)(allowing for reduction in damages when it is determined that violator was "not aware and had no reason to believe that his acts constituted a violation . . ."); *Doherty v. Wireless Broadcasting Systems of Sacramento, Inc.*, 151 F.3d 1129, 1131 (9th Cir.1998) ("The remedial provisions in both Sections 553 and 605 take into consideration the degree of the violator's culpability and provide for reduced damages in those instances where the violator was unaware of the violation."). In *J & J Sports Productions, Inc. v.*

*Arellano*, Case No. 2:13- cv-03128-WDK-PLA (C.D.Cal. Dec. 15, 2014) and

*J & J Sports Productions, Inc. v. Kiani*, Case No. 5:10-cv-01768-WDK-FMO

(C.D.Cal. Feb. 22, 2013), this Court noted the strict liability nature of the statutes

in granting Plaintiff summary judgment. *Arellano* at *3; *Kiani* at *4[1]; *see also J &*

*J Sports Productions, Inc. v. Delgado,* 2012 WL 371630, *3 (E.D.Cal. Feb. 3,

2012) (granting summary judgment for Plaintiff and holding that, "[b]oth § 553

and § 605 are strict liability statutes").

There is a split of authority regarding whether an interception, reception or

publication may violate both 47 U.S.C. §§ 605 and 553. *See J & J Sports*

*Productions, Inc. v. Torres,* 2011 WL 6749817, *4 (E.D.Cal. Dec. 22, 2011). At a

minimum, however, it cannot reasonably be disputed that an interception,

reception, and publication occurred, and that it was unauthorized. *See Declaration*

*of Affiant; Gagliardi Affidavit ¶ 7.* As such, the Court may find Defendants liable.

*Cf. Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349, n.1 (9th

Cir. 1999) (in which the Ninth Circuit found that judgment in favor of Plaintiff was

proper even though the issue as to which statute to apply was not raised). Next, the

Ninth Circuit has confirmed that section 605 applies to satellite television signals,

*Webb*, 545 F.3d at 844, and there is evidence of a satellite violation herein. *See*

*Declaration of Affiant* at 3-6 (photographs of satellite dish on roof of

---

[1] A copy of these opinions is submitted herewith with the Declaration of Thomas P. Riley.

establishment).Therefore, Plaintiff requests that liability be found and damages awarded under section 605. Such a finding is also keeping with the Ninth Circuit's observation that obtaining direct evidence of signal interception is difficult. *Webb*, 545 F.3d at 844 ("The law does not require direct evidence to support a factual finding. Circumstantial evidence may be sufficiently persuasive. Signal piracy is by its very nature a surreptitious venture and direct evidence may understandably be hard to come by.").

"Any person aggrieved…may bring a civil action in a United States district court or in any other court of competent jurisdiction." 47 U.S.C. § 605(e)(3)(A). "[T]he term 'any person aggrieved' shall include any person with proprietary rights in the intercepted communication by wire or radio[.]" 47 U.S.C. § 605(d)(6).[2] In this case, Plaintiff had the exclusive nationwide distribution rights to the Program, *Gagliardi Affidavit* ¶ 3, and thus is squarely a "person aggrieved" within the meaning of 47 U.S.C. §§ 605 and 553. *See J & J Sports Productions, Inc. v. Morales*, 2011 WL 6749080, *3 (E.D.Cal. Dec. 22, 2011).

    B.    <u>Plaintiff Did Not Authorize Defendants To Intercept, Receive, Exhibit Or Otherwise Broadcast The Program And Therefore Defendants Are Liable To Plaintiff.</u>

---

[2] Section 553 does not define "aggrieved party"; however, in light of the significant overlap between sections 553 and 605, the definition from section 605 is instructive. The fact that a party  like Plaintiff is a "person aggrieved" under section 553 also has been confirmed by case law. *J & J Sports Productions, Inc. v. Rezdndiz*, 2008 WL 5211288, *2 (N.D.Ill. Dec. 9, 2008).

Plaintiff had the exclusive commercial distribution rights for the *Program* and any commercial establishment in this country that wished to distribute the *Program* was obligated to contract with Plaintiff. *Gagliardi Affidavit* ¶ 3. Defendants did not take this route. *Id.* at ¶ 7. There was no other way for Defendants to broadcast the *Program* at their commercial establishment lawfully. The fact that the *Program* was broadcast at Playas De Acapulco a/k/a Restaurant Playa De Acapulco is conclusively established by the sworn affidavit of investigator Daniel Hernandez, who observed the broadcast of the *Program* at Playas De Acapulco a/k/a Restaurant Playa De Acapulco on September 14, 2013. *See Declaration of Affiant*.

To establish liability under 47 U.S.C. § 605 (or § 553) Plaintiff must establish that the Defendants unlawfully exhibited, published, received or divulged Plaintiff's privileged communication. *See* 47 U.S.C. § 605(a); *Webb*, 545 F.3d at 848. As noted above, piracy statutes give rise to strict liability and thus it is *not* necessary for Plaintiff to establish willfulness concerning the exhibition in order to establish liability.[3] *See* 47 U.S.C. § 605(e)(3)(C)(iii); 47 U.S.C. § 553(c)(3)(C). In that regard, even if Defendants were unaware of their violation, or if Defendants did not intend to broadcast Plaintiff's *Program* unlawfully, Defendants would still be liable. *J & J Sports Productions, Inc. v. Mendoza-Gowan*, 2011 WL 1544886,

---

[3] As discussed in the damages section (Section II, *infra*), Plaintiff contends that Defendants act willfully; nonetheless, this is not relevant to a determination of liability.

*6 (N.D.Cal. April 25, 2011)("[I]if it is later found that defendant acted unknowingly, damages under Section 553 or Section 605 may be reduced . . . . *This point is irrelevant, however, for determining liability*.") (emphasis added).

This specific Court has reached the same conclusion. *See Arellano,* Case No. 2:13-cv-03128-WDK-PLA at *3; *Kiani,* Case No. 5:10-cv-01768-WDK-FMO at *4 (emphasis added) (internal citations omitted). In short,"[a]s a strict liability statute, to prove a violation, [Plaintiff] need only show that the Event was shown in Defendant's establishment without its authorization." *Joe Hand Promotions, Inc. v. Moctezuma,* 2012 WL 2358254, *2 (N.D.Tex. June 21, 2012). Moreover, as noted above, "[t]he law does not require direct evidence to support a factual finding. Circumstantial evidence may be sufficiently persuasive. Signal piracy is by its very nature a surreptitious venture and direct evidence may understandable be hard to come by." *Webb,* 545 F.3d at 844.

District courts in California have consistently granted summary judgment under similar factual situations. In addition to the holding of this specific Court in *Arellano* and *Kiani*, *supra,* in *J & J Sports Productions, Inc. v. Morales*, *supra*, the plaintiff sought summary judgment for the unlawful interception of its September 19, 2009 program. The plaintiff submitted the affidavit of the president of the company, the affidavit of an investigator who observed the unlawful broadcast, and a copy of the rate card for the program. *Id.* at *3. Plaintiff herein submits substantially similar evidence. The *Morales* court found that, "Plaintiff has met its

initial burden of showing that (1) [d]efendant did not obtain a license from Plaintiff to receive the signal for the Program at [his establishment] (2) the Program was unlawfully received and exhibited at [the establishment] on September 19, 2009 and (3) Plaintiff is a 'person aggrieved' under section 605." *Id.*

Defendants may argue that they lawfully obtained the *Program* from a satellite provider. This argument has repeatedly been raised and rejected, including by this very Court. In *Kiani,* this Court noted the strict liability nature of the statutes and granting summary judgment to Plaintiff when the defendants purchased the program at issue through what they believed to be a valid Dish Network account. *See Kiani,* Case No. 5:10-cv-01768-WDK-FMO at *4 (internal citations omitted); *see also Delgado,* 2012 WL 371630 at *4.

In *J & J Sports Productions, Inc. v. Jorkay, LLC*, 2013 WL 2629461 (E.D.N.C. June 11, 2013), the district court *sua sponte* granted summary judgment to *plaintiff* in ruling on the *defendants'* Motion for Summary Judgment, holding:

> In their motion for summary judgment, defendants concede that they broadcast the event on September 19, 2009, at Rudy's Bar & Grille without obtaining a sublicense from J&J. . . However, defendants argue that they ordered the event through their commercial DirecTV account and paid $59.95 to show the event at their establishment. . . . Defendants argue that they did not know they needed authorization from J&J to show the event. . . .
>
> Defendants broadcast the event, . . . and they did not obtain a commercial sublicense. . . . Although defendants purchased the event from DirecTV, they do not avoid liability for broadcasting the event at their establishment without the authorization of the exclusive licensee, J&J.

Id. at *2 (internal citations omitted). Finally, assuming *arguendo* Defendants had a commercial account with Dish Network, that does not alter the conclusion that they are liable to Plaintiff. *Joe Hand Promotions, Inc. v. Kennedy*, 2012 WL 932543 (N.D.Ohio March 9, 2012) (granting summary judgment to plaintiff against a commercial Dish Network customer who attested that he "had no idea" that receiving the signal through Dish Network was "conceivably illegal or that Dish Network did not have the right to sell the company the broadcast.").

Based on the foregoing, there is no genuine issue of fact with respect to Defendants' liability and thus Plaintiff is entitled to summary judgment.

C.    Defendants Are Liable To Plaintiff For Conversion.[4]

With respect to Plaintiff's conversion claim, in California, the elements of conversion are "(1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages." *Tyrone Pac. Intern., Inc. v. MV Eurychili*, 658 F.2d 664, 666 (9th Cir. 1981). The specific type of property in question here  has been found to be property for purposes of a conversion cause of action. *Don King Productions/Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D.Cal. 1995); *Directv, Inc. v. Pahnke*, 405 F. Supp. 2d 1182, 1189-90 (E.D.Cal. 2005).  In this case, Plaintiff had the exclusive commercial

---

[4] Plaintiff does not seek summary judgment for its claim under the California Unfair Business Practices Act.

distribution rights over the *Program*, and, as such, had the right of possession at the time the *Program* was intercepted by Plaintiff. Under the circumstances, this action is properly classified as a conversion of Plaintiff's property. Courts have frequently found liability for conversion under similar circumstances. *E.g. Joe Hand Promotions, Inc. v. Gamino*, 2011 WL 66144, *4 (E.D.Cal. Jan. 10, 2011).

II.   PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES AND ENHANCED DAMAGES AS PERMITTED UNDER THE UNITED STATES CODE.

As a starting point, a party aggrieved under section 605 may, at its discretion, recover either actual or statutory damages. 47 U.S.C. § 605(e)(3)(C). Statutory damages are appropriate where actual damages are difficult to prove. *Lauretex Textile Corp. v. Allton Knitting Mills, Inc*., 519 F.Supp. 730, 732 (S.D.N.Y. 1981). The lack of adequate proof of any particular element causes the Court to rely, within its discretion, on the statutory limitations. *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952). Plaintiff opts to receive statutory damages.

Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3) (C)(i)(II). The amount of statutory damages to which Plaintiff is entitled for each violation of this section shall be not less than $1,000 nor more than $10,000. *Id.* Next, Plaintiff respectfully requests an award of "enhanced" statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). Section 605(e)(3)(C)(ii) permits this Court to award up to $100,000 in additional damages where "the violation was

committed willfully and for purposes of direct or indirect commercial advantage or private financial gain[.]" *Id.* Plaintiff seeks neither maximum. Plaintiff seeks neither maximum. Rather, Plaintiff requests $6,600 in statutory damages and, $20,000 in enhanced statutory damages, for a total statutory damages award of $26,600.  This is less than 1/4 of the total amount authorized by Congress. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II) and (e)(3)(C)(ii) (authorizing total damages up to $110,000). Under the circumstances of this case, Plaintiff submits that the damages requested both sufficiently compensate Plaintiff and function as an effective deterrent to prevent both these Defendants and similarly situated operators of commercial establishments from committing piracy.

> A.   <u>Congress Considers Piracy To Be Theft And Significant Damages Are Necessary To Curb The Pervasive Practice Of Piracy.</u>

When Congress enacted the Communications Act, it was keenly aware of the detrimental impact of piracy, including theft of closed-circuit programming, such as the *Program*. In fact, Congress has equated a violation of the statutes to a theft of service. *Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News*. '84 Bd. Vol. -6, 4655, 4720 (emphasis added). As stated in the House Bill:

> The Committee is extremely concerned with a problem which is increasingly plaguing the cable industry-*the theft cable service . . .*
>
> Theft of services deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving.  The Committee believes that theft of cable service poses a major threat to

the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it.

*Cable Communications Policy Act of 1984, House Report No. 98-934, 5 U.S. Cong. News.* '84 Bd. Vol. -6, 4655, 4720 (emphasis added). In assessing damages herein, Plaintiff requests that the Court take the purpose of the legislation into account and recognize that an "award of modest damages does not satisfy the purpose of the legislation." *J & J Sports Productions, Inc. v. Brazilian Paradise, LLC*, 789 F.Supp.2d 669, 677 (D.S.C. 2011).

> 1.   The Statutes Contemplate both Specific and General Deterrence.

A primary goal of piracy awards is deterrence. *See Joe Hand Promotions, Inc. v. Pinkhasov*, 2012 WL 3641451, *1 (D.Ariz. Aug. 24, 2012) (awarding maximum statutory damages of $10,000 "[a]fter considering the goal of deterring cable piracy"); *J & J Sports Productions, Inc. v. Marcaida,* 2011 WL 2149923, *4 (N.D.Cal. May 31, 2011) ("[T]he Court notes that signal piracy is a pervasive and increasing problem and that a primary purpose of § 605 is to deter such conduct. . . ."). In addition, the statutes contemplate both specific and general deterrence. As stated in *Gamino*, *supra,* "the amount of damages awarded should be in an amount that is adequate to deter these Defendants *and others* from committing similar acts in the future." 2011 WL 66144 at *4. In *Brazilian Paradise, LLC*, *supra,* the Court held:

> The court, recognizing the need to deter this unlawful activity, agrees with the Plaintiff that the award of modest damages does not satisfy the purpose of the legislation. The undersigned is in agreement with other courts that have considered this issue that a *firm judicial hand is required to stop this predatory behavior, which is outright thievery*, and to compensate the aggrieved appropriately.

*Id.,* 789 F.Supp.2d at 676-77 (internal quotation omitted) (emphasis added).

### B.   Statutory Damages And Enhanced Statutory Damages.

The Ninth Circuit has not established a formula for calculating damages under 47 U.S.C. § 605, and this Court has discretion in awarding statutory and enhanced statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II) and (c)((ii); *J & J Sports Productions, Inc. v. Guzman*, 2008 WL 2682605, *4-5 (E.D.Cal. July 1, 2008). While courts have looked to the licensing fee to determine an appropriate statutory damages award, this method undervalues the *Program* and fails to compensate Plaintiff adequately. *See Kingvision Pay-Per-View, Ltd. v. Jasper Grocery,* 152 F.Supp.2d 438, 442 (S.D.N.Y. 2001) ("a damage award based exclusively on licensing fees would undercompensate the plaintiff because the availability of unauthorized access to the program reduces demand and depresses the prices that [plaintiff] can charge for sublicenses."). Similarly, "[m]erely requiring [defendant] to pay the price it would have been charged to obtain legal authorization to display the Event does nothing to accomplish [the deterrent] objective of the statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid." *Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F.Supp.2d 769, 776 (S.D.Tex. 2002).

The *Program* was observed being broadcast at Defendants' establishment by investigator Daniel Hernandez. Mr. Hernandez observed the *Program* on two televisions, one 50" LCD tv and one smaller 20" tube television.  *Declaration of Affiant* at 1.The capacity of the establishment was estimated to be 40 and there 7 people present during the *Program. See Id.* at 2. As such, the commercial fee to obtain the *Program* lawfully was $2,200. *Gagliardi Affidavit* ¶ 8. While the circumstances of this case may not appear egregious on their face, there still must be some consequence to Defendants for their act of piracy. Ultimately, even if the Court is not inclined to award Plaintiff the amounts it requests, there must be some premium beyond simply requiring the Defendants to pay what they should have paid in the first place. Congress has equated piracy with theft, *see* 1988 U.S. Code Cong. & Admin. News 7, 5577, 4642-43. In this regard, permitting a pirate to simply pay what he should have paid is tantamount to permitting a shoplifter, *if* he gets caught, simply to pay for the item he attempted to steal. *See Al-Waha Enterprises, Inc.*, 219 F.Supp.2d at 776 ("There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid.").

In calculating damages, the case of *J & J Sports Productions, Inc. v. Tilakamonkul*, 2011 WL 2414550 (E.D. Cal. June 10, 2011), is instructive. In that case, the court noted:

> Defendant's establishment is a medium sized, dine in and take out, family restaurant, with a maximum capacity of approximately sixty patrons. . . . Plaintiff's investigator, noted that [the establishment] was "in very good condition" and is located "within the incorporated city

limits of Merced." The restaurant's dining area contains a sixty-inch projection style television set, sitting on an entertainment center in the southeast corner of the room . . . . [The investigator] conducted three head counts. Each of the three counts revealed that eight persons were present

Id. at *3. After taking these factors into account, the Court held:

In light of the foregoing, this Court will recommend that the maximum statutory damages be awarded, to wit: $10,000.00. Moreover, because Defendant's actions were willful, coupled with the fact that the establishment is in very good condition, in an incorporated part of Merced, yet the number of patrons present during the exhibition of the pirated Program was low, the Court will also recommend that enhanced damages of $20,000.00 be awarded.

Id. at *4. The facts herein are similar to those present in *Tilakamonkul*. There were 7 patrons in this case, as opposed to 8 patrons in *Tilakamonkul*, and the Program was shown on two televisions, as opposed to 1 in *Tilamonkul*. *J & J Sports Productions Inc. v. Olivares*, 2011 WL 587466, *3 (E.D.Cal. Feb 9, 2011), is also instructive. In *Olivares*, the district court awarded $10,000 in statutory damages and $50,000 in enhanced damages against establishment showing the event on three televisions with 60+ people present. While there were fewer patrons and one fewer televisions in this case, Plaintiff requests less than 1/2 the award in *Olivares*. *Olivares* is particularly instructive because the *Olivares* court concluded that the circumstances demonstrated that the violation "likely had a *minimal* impact." *Olivares,* 2011 WL 587466 at *3 (emphasis added).

*J & J Sports Productions, Inc. v. McCausland*, 2012 WL 113786 (S.D.Ind. Jan. 13, 2012) is also instructive. In *McCausland*, after evaluating the facts and the

purposes of the piracy statutes, including the importance of deterrence, the district court awarded $10,000 in statutory damages and $30,000 in enhanced damages. *McCausland,* 2012 WL 113786 at *3-4.. In *McCausland*, there were between 10-17 patrons and the program was shown on one television. *McCausland*, 2012 WL 113786 at *1. The commercial fee to broadcast the program was the same, $2,200. *Id.* In awarding $30,000 in enhanced statutory, *McCausland* stated:

> Defendants' actions, although willful, *had a relatively small impact*: they occurred in a small geographic location; they occurred in a small establishment; there is no evidence that Defendant is a repeat offender; and there is no evidence that Defendants advertised or charged cover.

*McCausland*, 2012 WL 113786 at *4.

With respect to whether Defendants acted willfully and for financial gain, this is established by the testimony of Mr. Gagliardi, *see Gagliardi Affidavit* ¶¶ 9, 14-17, as well as by case law. As stated in *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F.Supp.2d 659 (E.D.Va. 2013):

> The act of intercepting an encrypted broadcast is not done by accident, but requires an affirmative action by the defendant. Very simply, the Court finds that the defendant took willful action to unlawfully intercept and broadcast the Exhibition. Further, the Court finds that this willful act was done for either "direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The defendant restaurant is a commercial establishment, and on the night of the Exhibition hosted approximately forty patrons, who were able to enjoy the Exhibition at no cost to the defendant restaurant. Each of the restaurant's six televisions showed the Exhibition. . . . Because the defendant showed the Exhibition on all of its televisions at no cost, the Court concludes that the defendant acted willfully for commercial advantage and private financial gain.

*Id.* at 668-69.  In *Wing Spot*, the court actually concluded that the actions of the defendant were not egregious and thus a "milder fine" of $27,000 was appropriate. *Id.* at 668.

In *Marcaida,* 2011 WL 2149923 at *3, the court noted that it was extremely unlikely that the defendant inadvertently acquired the program because "signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems." *Id.* at *3 (citation omitted).

C.      The Damages Requested By Plaintiff Comport With The Suggestion Of The Ninth Circuit.

A total statutory award of $26,600, as requested by Plaintiff, is proper in that it is a "sanction that deters but does not destroy." *Lake Alice Bar,* 168 F.3d at 350.[5] In *Lake Alice Bar,* the district court originally awarded $80,400 on default judgment. *Id.* at 349. At a hearing on a later motion to vacate the default judgment, the district court granted the defendant an opportunity to make an oral motion to reduce the award. *Id.* at 350. After the oral motion, the district court reduced the award to $4,000. *Id.* On appeal, the Ninth Circuit found this reduction procedurally improper and remanded so that both parties could be heard on the issue of damages. *Id.*  Nonetheless, in the course of entering its opinion, the Ninth Circuit opined that "[d]epending on the circumstances, a low *five figure* judgment may be

---

[5] *Lake Alice Bar* is not controlling on the issue of damages, nonetheless, it is persuasive authority.

a stiff fine that deters, while a high five figure judgment puts a bar out of business." *Id.* at 350 (emphasis added). Plaintiff requests a low five-figure judgment.

### III.   PLAINTIFF IS ENTITLED TO DAMAGES FOR CONVERSION.

Damages for conversion are based on the value of the property at the time of the conversion. Cal.Civ.Code § 3336. Plaintiff requests $2,200 in conversion damages (the amount Defendants would have had to pay to broadcast the *Program* lawfully). *Gagliardi Affidavit* ¶ 8. Courts have frequently granted conversion damages in addition to statutory damages.  *E.g. J & J Sports Productions, Inc. v. Paolilli,* 2011 WL 6211905, *4 (E.D.Cal., Dec. 14, 2011). Plaintiff is aware that this Court has previously denied conversion damages as cumulative.

### IV.   PLAINTIFF IS ENTITLED TO COSTS AND REASONABLE ATTORNEYS' FEES.

47 U.S.C. § 605 mandates an award of costs and attorneys' fees to an aggrieved party. Specifically, the section states that the Court, "*shall direct* the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii)(emphasis added). Pursuant to Local Rule 54-12, Plaintiff requests that it be granted 14 days from the entry of judgment to submit its Motion for costs and attorneys' fees.

### CONCLUSION

Based on the foregoing recitation of the unauthorized and illegal activities of the Defendants, it is clear that there is no genuine issue of material fact that

Defendants violated 47 U.S.C. § 605 in illegally intercepting, receiving and/or publishing the *Program* at their commercial establishment; similarly, there is no genuine issue of material fact that Defendants committed the tort of conversion. Under the circumstances, no reasonable fact-finder could find that there is a genuine issue of material fact for trial and, therefore, Plaintiff's Motion for Summary Judgment should be granted and Plaintiff should be awarded damages as detailed herein. *See* Fed.R.Civ.P. 56(a).

                                    Respectfully submitted,


                                    /s/  *Thomas P. Riley*
Dated:  September 14, 2015          **LAW OFFICES OF THOMAS P. RILEY, P.C.**
                                    By:  Thomas P. Riley
                                    Attorneys for Plaintiff
                                    J & J Sports Productions, Inc.

# PROOF OF SERVICE

I declare that:

I am employed in the County of Los Angeles, California.  I am over the age of eighteen years and not a party to the within cause; my business address is First Library Square, 1114 Fremont Avenue, South Pasadena, California 91030.  I am readily familiar with this law firm's practice for collection and processing of correspondence/documents for mail in the ordinary course of business.

On September 14, 2015, I caused to serve the following document entitled:

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES

On all parties referenced by enclosing a true copy thereof in a sealed envelope with postage prepaid and following ordinary business practices, said envelope was addressed to:

Denise E. Wright, Esq.
Denise E. Wright Law Offices
5055 Wilshire Boulevard Suite 202
Los Angeles, CA 90036

The fully sealed envelope with pre-paid postage was thereafter placed in our law firm's outbound mail receptacle in order that this particular piece of mail could be taken to the United States Post Office in South Pasadena, California later this day by myself (or by another administrative assistant duly employed by our law firm).

I declare under the penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct and that this declaration was executed on September 14, 2015, at South Pasadena, California.

Dated:  September 14, 2015                    /s/ Brianna Gomez
                                                               BRIANNA GOMEZ